## STILLMAN *against* ISHAM.

Public officers having money in their hands, to which certain individuals are entitled, are not liable to the creditors of those individuals, in the process of foreign attachment.

Therefore, where the state's attorney commenced a suit, in the name of the county treasurer, on a forfeited bail bond, taken in a criminal proceeding; and during the pendency of such suit, the General Assembly, on the application of the person suffering by the offence complained of, directed the money which should be recovered on such bond, to be paid over to such sufferer; the attorney afterwards received the money due on the bond; and while it was in his hands, before any demand upon him, a creditor of such sufferer brought foreign attachment; it was held, that the attorney, having received and held the money, in his official capacity, as agent of the public, the process was not sustainable.

THIS was a *scire-facias* against the defendant, as the trustee and debtor of *Elisha Congdon,* an absent and absconding debtor; to which the general issue was pleaded.

The cause was tried at *Norwich, March* term, 1835, before *Williams,* Ch. J.

Upon the trial, it was admitted, that the original process and the proceedings under it were regular; and that the defendant was liable for the sum claimed by the plaintiff, if, upon the facts disclosed, he could be made liable under this process. The facts were these. The defendant was state's attorney for *New-London* county; and one *Calvin Mason* had been prosecuted by him, in behalf of the state, for burning a shop or store and its contents. A bond for his appearance at court was taken; this bond was forfeited; and a suit was brought thereon, in the name of the county treasurer, by the defendant, as attorney for the state. During the pendency of this suit, *Congdon,* the owner of the store, together with the owner of the goods therein, brought a petition to the General Assembly, shewing, that *Mason* was insolvent; that they should suffer greatly by the fire; and praying, that they might have the benefit of the bail bond; upon which, a resolution was passed, by the General Assembly, that the balance in the hands of the attorney or treasurer, received as the avails of said bond, deducting costs and charges, should be paid over, by said attorney or treasurer, two thirds to *Congdon,* and one third to the owner of the goods. The defendant afterwards received the money due upon the bond;

immediately after which, before any demand upon him, by *New-London,* *Congdon,* this process was served upon him.

*July, 1835.*

The court was of opinion, that the defendant received this money in his official character, as state's attorney, and as such, was accountable therefor to the state or to the county, and not to the creditors of *Congdon,* and found the issue for the defendant. The plaintiff thereupon moved for a new trial.

*Stillman* *v.* *Isham.*

*Brainard,* in support of the motion, contended, 1. That the defendant was not protected from liability in this process, because he was *a public officer.* No such principle has ever been decided; but the particular cases in which certain officers, for certain reasons, and certain persons not officers, for like reasons, are said not to be liable, shew that there is no such general principle. *Cole* v. *Wooster,* 2 *Conn. Rep.* 203. *Knox* & al. v. *The Protection Insurance Company,* 9 *Conn. Rep.* 430. *Caila* v. *Elgood,* 2 *Dowl. & Ryl.* 193. (16 *Serg. & Lowb.* 78.) 9 *Petersd.* 478, 9. In *Maine, Massachusetts* and *New-Jersey,* moneys collected by an attorney are subject to this process. *Staples* v. *Staples* & al. *Greenl.* 531. *Thayer* v. *Sherman* & al. 12 *Mass. Rep* 441. *Woodward's* exrs. v. *Woodward,* 4 *Halsted* 115. The result of the cases, is, that the statute operates where it is reasonable; and wherever the reason ceases, the law ceases, and the rule is deemed inapplicable. The provisions of the statute are always to be construed liberally to effect its object.

2. That this money, by force of the resolve of the General Assembly, became *Congdon's* money; and the defendant, the momen the received it, was his trustee. *Congdon* could sue him for it. He was accountable to *Congdon,* and to him alone The resolve was a direction to the attorney to pay over the money, when it should come into his hands, to *Congdon,* and not to the state or the county. Then, if the money was the property of *Congdon,* and subject to his controul, it was subject to the operation of the foreign attachment law.

3. That if the defendant could, under any circumstances, interpose his official character to shield the money of another in his hands from this process, he could not do so here, because all his official acts had been performed. The prosecution was ended and the money collected. Nothing remained for him to do, as state's

attorney, except to pay over the money ; and the resolve of the General Assembly directed him to pay it to *Congdon.*

*Goddard* and *Child*, contra, contended, 1. That there was no *debt* due from the defendant to *Congdon*, at the time the copy was left in service. The bond was the property of the state. The money belonged to the state ; and came into the defendant's hands, as an officer of the law, and by operation of law. There was no *privity* between the defendant and *Congdon.*

2. That on general principles, a public officer is not liable to this process. If the state's attorney does not do his duty, there are other modes of redress: it does not give a private individual a right of action against him. Take the case of the clerk of the court, who has money in his hands to pay the fees of witnesses and jurors ; can he be subjected to this process for the fee of each witness and juror ? If so, the clerk could never settle his account. He might be called away from the duties of his office into every part of the state to disclose. This would be equally true of every other disbursing officer. *Spalding* v. *Imlay, Kirby* 551. *Chealy* & al. v. *Brewer* & al. 7 *Mass. Rep.* 259. In the case of an executor or an administrator, where the difficulties are not more forcible, it has been decided, and it is well settled, that this process is not sustainable. *Winchell* v. *Allen,* 1 *Conn. Rep.* 385. *Barnes* v. *Treat* & al. 7 *Mass. Rep.* 271. *Brooks* v. *Cook* & al. 8 *Mass. Rep.* 246.

3. That the defendant is not liable to this process, because *no demand* was made of him by *Congdon*, and *no notice* given him of the passage of the resolve. *Wilder* v. *Bailey* & al. 3 *Mass. Rep.* 289.

WILLIAMS, Ch. J. The question is, whether the facts in this case will subject the defendant to the process of foreign attachment.

Two objections are made to the plaintiff's recovery. 1. That no demand had been made, by *Congdon*, of the money. 2. That the character in which the defendant received the money, must protect him from suits of this kind. If the decision in *Wilder* v. *Bailey* & al. 3 *Mass. Rep.* 289. is adopted, it would seem to terminate the case upon the first point. But as the court are

perfectly satisfied, upon the second objection, that the decision below was correct, their opinion is founded entirely upon *that*.

The process of foreign attachment was originally designed to prevent a debtor from fraudulently placing his goods and chattels beyond the reach of legal process. The statute of frauds was designed to prevent the fraudulent *conveyance* of property ; this statute, the fraudulent *concealment* of it. Being made to prevent fraud, a liberal construction has been given to it ; in consequence of which, the statute has had a very extensive and beneficial operation. But while the court are desirous to continue the liberal construction which has been given to this statute, they must not extend it to cases not within its spirit, by which others who are in the execution of public trusts, would be subjected to serious inconvenience.

It was many years since adjudged, by the superior court, that this process could not be sustained against a loan officer. *Spalding* v. *Imlay,* 1 *Root* 551. And this has ever since been recognised as the law of the state. It has also been holden, by this court, that an administrator or executor could not be made liable to this process, although the deceased was indebted to the absconding debtor, or had given him a legacy by his will. *Stanton* v. *Holmes,* 4 *Day* 87. 96. *Winchell* v. *Allen,* 1 *Conn. Rep.* 385. Similar decisions have been made in the state of *Massachusetts,* on a statute very similar. *Brooks* v. *Cooke* & al. 8 *Mass. Rep.* 246. *Barnes* v. *Treat* & al. 7 *Mass. Rep.* 271. It has also been decided, in the same state, that the county treasurer could not be subjected in this process, for the fees due to a juror in his hands. *Chealy* v. *Brewer* & al. 7 *Mass. Rep.* 259. So in *Pennsylvania,* it has been held, that money in the hands of a prothonotary, could not be attached. *Ross* v. *Clarke,* 1 *Dal.* 354. So too, under the custom of *London,* it is said, that property in the hands of government and its agents, as the public funds and dividends due thereon, cannot be attached. 9 *Petersd.* 714. *n.*

The pervading principle, in all these cases, is, that public officers, who are bound to transact the public business, by certain rules, and in certain forms, shall not be exposed to the expense, the inconvenience and hazard incident to this process. It is apparent, that if this process is allowed, it must destroy the simplicity of the mode of accounting. Instead of the receipt of the person who is entitled to the money, the officer must produce

and verify the process under which it was paid.   He must then run the risk of any mistaken opinion as to its legality, or await the slow proceedings of judicial decisions.   He may have to meet and decide upon conflicting claims of creditors as to their priority ; and may be called to appear in remote parts of the state, to the injury of the public business, with some expense and great inconvenience to himself.

These objections exist in the case of all public officers, whether they are loan officers, county treasurers, administrators or state's attorneys.

Upon principles then well settled, the plaintiff cannot recover, unless he can shew, that this money was not received or holden, by the defendant, in his public capacity.   This, the counsel for the plaintiff has attempted to do.   It is said, that the prosecution having terminated against *Mason*, and he being ordered to pay over this money to *Congdon*, the official duty of the defendant to the government has ceased.   As the attorney of the state, he commenced the prosecution against *Mason*.   He acted in the same capacity, when he instituted a suit upon the bail bond.   While pursuing that suit, he receives an order from his employer to pay that money over to *Congdon*.   This is no discharge to him from the service of the state. It is a mere direction to him how he shall execute his duty in that service.   He is as much bound to account to the state as ever ; but *Congdon's* receipt will be as good upon settlement of the account as the treasurer's would have been before.   In short, the state has only designated where this money collected by him may be paid.   It places him, as to this money, precisely upon the same ground with the treasurer.   It may be paid either by him, or the treasurer, to *Congdon*.   The defendant, then, can no more be liable to this process than the treasurer would have been, had the money been paid over to him.

The defendant then collected this money, as the agent of the public.   As the agent of the public, he held it.   As such, he must account for it.   And he ought not, then, to be subjected to the conflicting claims, which may arise among the creditors of an individual, to whose use the state may have appropriated it.

There can, therefore, be no new trial.

BISSELL and WAITE, Js. were of the same opinion.

CHURCH and HUNTINGTON, Js. gave no opinion; the former not having been present when the case was argued, and the latter having been consulted in a similar cause.

New trial not to be granted.